| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**SOUTHERN DISTRICT OF NEW YORK** | NOT FOR PUBLICATION |
| In re:<br><br>G.M. CROCETTI, INC.,<br><br>Debtor, | Chapter 11 Case<br><br>Case No. 07-10319 (BRL) |
| G.M. CROCETTI, INC.,<br><br>Plaintiff<br><br>-against-<br><br>HRH CONSTRUCTION, LLC,<br><br>Defendant. | Adversary Proceeding No. 08-1065(BRL) |

**MEMORANDUM DECISION GRANTING MOTION OF**
**HRH CONSTRUCTION, LLC FOR PARTIAL SUMMARY JUDGMENT**

Before the Court is the motion (the "Motion") for partial summary judgment filed by HRH Construction, LLC ("HRH"), defendant in the above-captioned adversary proceeding, seeking to dismiss those claims filed by G.M. Crocetti, Inc. (the "Debtor") arising out of or relating to a construction project at 200 West 24th Street (the "24th Street Project") as time-barred or untimely. The Debtor objects to the Motion and contends that the causes of action asserted in its complaint relating to the 24th Street Project were timely pled or that at a minimum a triable question of fact exists as to the issue of substantial performance on of the 24th Street Project. For the reasons set forth below and at the hearing held on August 26, 2008, the Motion is granted.

**BACKGROUND**

<u>The Parties and the Subcontract</u>

HRH was retained by Seventh Avenue Development LLC in September 2003 as construction manager for the 24th Street Project, a residential condominium development that was to be built in the Chelsea section of Manhattan. Subsequently, on or about June 17, 2004, HRH entered into a contract with the Debtor, as subcontractor, to perform wood and resilient flooring and carpeting work at the 24th Street Project (the "Subcontract").[1] The Subcontract called for the Debtor to "provide all labor, material equipment, tools, engineering, shop drawings, hoisting, scaffolding, bracing, mobilization, layout, supervision, administration and other services required to furnish and install all Wood Flooring, Resilient Flooring and Carpet Work…." Rider No. 2 to Subcontract dated June 17, 2004, at p. 1.[2] In exchange for providing these services, the Debtor was to receive base compensation of $182,100.00 in addition to any amounts approved under any subsequent change orders. Subcontract, at § 3.1.

Among other things, the Subcontract provided for a shortened time period within which the Debtor would be permitted to file a claim or action arising under the Subcontract. Specifically, section 18.4 of the Subcontract provided, *inter alia*, that "[a]ny claim or action by the Subcontractor [the Debtor] must be commenced within two years of the date of the cause of

---

[1] The Subcontract is more precisely titled "Contract By and Between HRH Construction LLC as Contractor and G.M. Crocetti, Inc. as Subcontractor for Trade: Wood & Resilient Flooring & Carpeting."

[2] Paragraph 100 of Rider No. 2 to the Subcontract went on to state:

> The Work shall include, but is not limited to, all necessary design, labor, materials, accessories, equipment, hardware, fasteners, tools, layout, engineering, supervision, hoisting, scaffolding, shop drawings, packaging, trucking, freight, delivery, permits and all other services, required for the full and complete performance of this trade and all related Work for this project in strict accordance with the Contract Documents including this Scope of Work and the Drawings and Specification as listed in the Exhibit attached hereto.

Rider No. 2 to Subcontract, at ¶ 100.

action accrued, but in no event later than one year after substantial performance of this Contract [the Subcontract]." This issue of "substantial performance" is the crux of the matter presently before the Court.

The Bankruptcy Proceeding

On February 8, 2007, the Debtor and its affiliates each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Approximately one year later, on or about February 12, 2008, the Debtor commenced a number of adversary proceedings, including the action presently before the Court, to recover amounts allegedly due on various construction contracts for subcontracting work performed by the Debtor. Specifically, the complaint (the "Complaint") filed by the Debtor against HRH alleges, *inter alia*,[3] that the Debtor fully performed all of its obligations under the Subcontract and that HRH is in breach of its obligations under the Subcontract for failing to pay an outstanding balance of $61,402.22.[4] Complaint dated February 12, 2008, at ¶¶ 14-21.

On or about April 4, 2008, HRH filed its answer and counterclaim to the Complaint stating that HRH had fully complied with the terms of its subcontracts with the Debtor and it was the Debtor, not HRH, that had breached those agreements by failing to substantially complete its flooring and carpeting work in accordance with the various project schedules and timetables. Answer and Counterclaim dated April 4, 2008, at ¶¶ 33-44.

---

[3]  The Complaint also alleges certain causes of action relating to a second construction site known as the Jefferson Place Project. The causes of action relating to the Jefferson Place Project, however, are currently not at issue before the Court on the Motion and, accordingly, the Court need not address those claims at the present time.

[4]  The Debtor arrives at this $61,402.22 figure in the following manner: According to the Complaint, the Debtor was entitled to be paid the sum of $182,100.00 per the original Subcontract, the additional sum of $12,400.00 for approved change orders, as well as the additional sum of $41,565.22 in pending change orders, for a total of $236,065.22. Of that sum, the Debtor claims to have been paid $174,663.00 leaving an outstanding balance of $61,402.22. *See* Complaint, at ¶¶ 14-21.

3

The Summary Judgment Motion

On or about June 13, 2008, HRH filed the present Motion for partial summary judgment to dismiss the claims in the Complaint relating to the 24th Street Project.[5]  In the Motion, HRH contends that the Debtor completed work on the 24th Street Project in July 2005 and, consequently, any claims relating to the 24th Street Project pled in the Complaint (which was not filed until February 12, 2008) are time-barred by the one-year contractual limitations period embodied in section 18.4 of the Subcontract.

HRH relies on a payment application submitted by the Debtor for the period of September 1 to September 31, 2005 (the "September 2005 Invoice") to support its contention that the Debtor completed "substantial performance" of the 24th Street Project in July 2005. HRH contends that the Debtor stated in the September 2005 Invoice that it had completed 100% of the contract and project work for the 24th Street Project during the previous payment periods. According to HRH, as the Debtor freely admitted that the 24th Street Project was substantially completed in July 2005, any action arising out of that project had to be commenced no later than July 2006 in accordance with section 18.4 of the Subcontract.  Accordingly, as the Debtor did not commence the instant action until February 2008, HRH contends the claims are time-barred. *See* Memorandum of Law in Support of the Motion dated June 10, 2008, at pp. 3-6.

Similarly, HRH also contends that the extension of time provision allowed for under section 108(a) of the Bankruptcy Code cannot be used to save the Debtor's claims because section 108(a) only applies if the limitations period in question has not previously expired prior

---

[5] In accordance with Local Rule 7056-1, by letter dated May 14, 2008, HRH requested leave to file the present Motion for summary judgment and at a hearing held on May 21, 2008, the Court granted HRH's request.

4

to the petition date.[6] In this case, according to HRH, the contractual limitations period expired in July 2006 and the Debtor did not commence its chapter 11 proceeding until February 2007. *See* Memorandum of Law in Support of the Motion dated June 10, 2008, at p. 6.

In contrast, however, the Debtor contends that substantial performance of the Subcontract was not achieved until June 2006. The Debtor admits that it completed what it describes as the "base contract work" of the Subcontract in June 2005, however, the Debtor contends that it continued to work under the terms and conditions of the Subcontract performing "comeback" and "change order work" at the 24th Street Project until June 2006. Specifically, the Debtor cites substantial repairs performed on a flood damaged penthouse in June 2006 to demonstrate that the work it continued to perform under the Subcontract was significant and "not trivial or slight."[7] *See* Debtor's Memorandum of Law in Opposition (the "Opposition") to the Motion dated July 29, 2008, at pp. 2-5. The Debtor contends that because it continued to perform significant "comeback work" under the terms of the original Subcontract, substantial completion of the 24th

---

[6] Bankruptcy Code section 108(a) provides the following:

If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—

  (1)  the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

  (2)  two years after the order for relief.

11 U.S.C. § 108

[7] To demonstrate the substantial nature of the additional "comeback work" that the Debtor performed subsequent to July 2005, the Debtor cites a letter dated September 8, 2006 from HRH's counsel to general counsel for the owner of the 24th Street Project (the "September 8 Letter"), in which HRH declines to reduce its lien on the 24th Street Project as requested by the project owner. In the September 8 Letter, HRH states that its laborers and project management team were on site extensively from March – June 2006 for various purposes, including to perform work on a leak in the penthouse and that "[t]hose events are sufficient under lien law" to continue to maintain its lien. *See* Affidavit in Opposition to Motion, dated July 15, 2008, at ¶¶ 5-12.

5

Street Project did not occur until June 2006 and, therefore, the contractual limitations period did not expire until June 2007 – approximately four months after the Petition Date.

In its reply to the Opposition (the "Reply"), HRH counters that under New York law, subsequent repair work does not operate to extend the accrual date for claims past the date of substantial completion. *See* Reply dated August 18, 2008, at pp.2-5. Moreover, HRH also contends that the "comeback work" cited by the Debtor – namely repairs to a leaky roof – was outside the scope of the original base contract work under the terms of the Subcontract and, therefore, cannot be used to alter the date of substantial completion. *See* Reply, at pp.5-7.

## DISCUSSION

Rule 56 of the Federal Rules of Civil Procedure, which is made applicable to this adversary proceeding pursuant to Bankruptcy Rule 7056, governs the filing of motions for summary judgment and states, in relevant part, that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issues as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Morenz v. Wilson-Coker,* 415 F.3d 230, 234 (2d Cir.2005); *Nisselson v. Waltzer* (*In re MarketXT Holdings Corp.*), 04-12078 (ALG), 2008 WL 2164572, *2 (Bankr. S.D.N.Y. May 22, 2008).

The moving party bears the burden of demonstrating the absence of any genuine issue of material fact, and all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986); *see also In re Northwest Airlines Corp.*, 383 B.R. 283, 291-92 (Bankr. S.D.N.Y. 2008); *Ames Dep't Stores, Inc.,* 161 B.R. 87, 89 (Bankr. S.D.N.Y.1993). A fact is considered material if it might affect the outcome of the suit under governing law. *See*

6

*Anderson,* 477 U.S. at 248. "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine issue of fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986); *In re WorldCom, Inc.*, 377 B.R. 77, 85 (Bankr. S.D.N.Y. 2007).

Rule 56(d) provides for partial summary judgment if not all the facts exist without material controversy. Rule 56(d) "serves the purpose of speeding up litigation by eliminating before trial matters wherein there is no genuine issue of fact." *In re WorldCom, Inc.*, 377 B.R. at 85.

First and foremost, the Court notes that the September 2005 Invoice is *the only invoice presented by either party in support of the Motion, the Opposition or the Complaint*. It is clear from the September 2005 Invoice that in exchange for services rendered under the Subcontract up to the date of the September 2005 Invoice, the Debtor sought $194,500.00 in compensation.[8] It is equally as clear from the September 2005 Invoice that as of September 30, 2005, the Debtor had received payment of $174,665.00 of the $194,500.00, leaving an outstanding balance of $19,835.00. The Court notes that the Debtor acknowledged receiving payments totaling $174,665.00 when calculating damages in the Complaint.[9] Accordingly, there is no question that of the $61,402.22 the Debtor claimed in damages concerning the 24th Street Project, $19,385.00

---

[8] This figure represents the original $182,100.00 provided for as base compensation under the Subcontract as well as $12,400.00 in approved change orders.

[9] The Complaint actually references payment of $174,663.00.

7

relate either to the original flooring and carpeting work for which the parties contracted or approved change orders performed under the Subcontract on or before September 2005.

The September 2005 Invoice makes clear that both the original trade work and the approved change orders had been substantially completed in June 2005.  In fact, the September 2005 Invoice goes even further, unequivocally stating that both the contract work and approved change orders had been 100 percent completed prior to that invoice.  As a result, the agreed upon one-year contractual limitations period of section 18.4 of the Subcontract began running in June 2005 and would apply to bar any claim by the Debtor for the $19,385.00 that remained outstanding in September 2005.

Similarly, the information contained within the September 2005 Invoice also permits the Court to dispose of the claims relating to the remaining $42,017.22 in damages for "pending or disputed change orders" relating to the 24th Street Project.  The September 2005 Invoice lists $41,565.00 in pending or disputed items as of September 30, 2005.  Therefore, according to the Debtor's own application for payment, work amounting to $41,565.00 in services rendered (or approximately 98.9% of the Debtor's remaining $42.017.22 in claims) had already allegedly been performed as of September 30, 2005.  While the Debtor has suggested that it performed significant work on unrelated flood damage and repair work under the Subcontract in June 2006, curiously, it has not provided any invoices, agreements, affidavits or the like to demonstrate that such work was performed or that it had not been paid for those services.  As a result, the Court finds that any claims relating to the remaining $42,017.22 in "pending or disputed change orders" were also subject to the one-year contractual limitations period of section 18.4 of the Subcontract, which began running in June 2005, and are, therefore, time-barred.

Accordingly, the Court finds that no genuine issue of material fact exists as to either the $19,385.00 outstanding for original contract work and approved change orders or the $42,017.22 outstanding for disputed change orders. As the one-year contractual limitation period applies to the entire $61,402.22, summary judgment as to all the Debtor's claims relating to the 24th Street Project is appropriate.

## **CONCLUSION**

For the reasons set forth above and at oral argument, the Motion is granted.

Submit an order consistent with the foregoing.

Dated: New York, New York
      August 26, 2008

    /s/Burton R. Lifland_____
    The Honorable Burton R. Lifland
    United States Bankruptcy Judge